## JOSEPH A. WEBER

### *v.*

## STATE OF ILLINOIS.

### *Opinion filed November 29, 1918.*

MEMBERS OF LEGISLATURE. CONTEST. *Legislature acts in judicial capacity.* Under the Constitution the Legislature acts in a judicial capacity when exercising its power in an election contest of its members, and determines the result of the election of its members without interference or intervention of the Courts.

EXPENSES OF CONTEST—*expenses of election contest determined by the Legislature.* Incidental to the power of the Legislature to determine the result of an election of its members, the expenses incurred in such contest should be fixed and determined by the Legislature itself.

SAME—*the right to fix, allow or disallow expenses an exclusive one.* The right to fix, allow or dis-allow expenses incurred in election contest of its members is as exclusive as the power to hear and determine such contest.

JURISDICTION—*Court is without jurisdiction in such cases.* The Court is without jurisdiction to allow a claim for solicitor's fees and expenses incurred in contest of election of members of the General Assembly.

Edward J. Brundage, Attorney General, for State.

Joseph A. Weber, the claimant, presents to the Court his claim in the sum of $1,250.00, alleged to have been paid out and expended by him in about his defense in a contested election case.

Wherein one Wilson contested Weber election as a member of the house of representatives in the 50th General Assmbly of Illinois.

It appears from the uncontroverted evidence that the claimant was elected as a member of the fiftieth General Assembly from the sixth Senatorial District on the 7th day of November, 1916, and received a certificate of his election December 9, 1916.

Robert E. Wilson gave due notice of the contest for his seat, and after the convening of the Legislature, the said contest was referred to the election committee in the house, which voted to recount the ballots cast in said election.

A committee of five members was appointed to conduct the proceedings.

The committee went to Chicago of which the sixth district forms a part.

The committee proceeded to count the ballots.

The claimant employed legal counsel to aid in the contest; and engaged six watchers and six talliers at $10.00 a day each, making a

—3 C C

sum of ...............................................$ 480.00
His attorney fee was fixed at...............................     500.00
Incidental expenses at ....................................     270.00

Making a sum total of...................................$1,250.00

The recount and result of the contest showed that claimant was elected by over 1,000 votes majority.

· The report of the committee showed Wilson, the contestant was badly defeated, and that claimant herein was duly elected.

The report was approved by the house, claimant prepared his expense account and all charges which are set forth herein heretofore and same were approved by the proper committee.

A resolution had been introduced and passed by the house in the 50th General Assembly limiting the attorneys fees to be paid in such cases not to exceed $500.00 to any sitting member against whom a contest should be filed and in which a recount was required, and not to exceed $250.00 where contest should be dismissed without recount of ballots.

Also that actual expenses for railroad fare, etc., if itemized and verified might be allowed to such sitting member, contestee, provided he is successful in retaining his seat.

The expenses were itemized and verified by claimant to amount of $745.15.

It appears in evidence that an appropriation was made.

By reference to the session laws of 1917, page 86, we find that two items there contained in H. B. 1037 and presented to the Governor for his approval.

The first item was for "Joseph A. Weber for expenses for himself and his attorney in contest case 745.15."

"The second item, Andrus & Trutter attorneys fees for Joseph A. Weber, $500.00 both of which items were vetoed by the Governor."

On the same page of said session laws and continuing on pages 87, 88 and 89 we find about 33 items for similar claims in other election contests of same character, and all "vetoed." ·

The claimant says the Governor vetoed his claim because it had not been referred to the Court of Claims for allowance.

There is no record evidence to this effect in this case.

On page 90 session laws—session laws 1917, the Governor is recorded as saying "I veto each of said items (after having vetoed items above mentioned) for the reason set forth in the opinion of the Attorney General, a copy of which is hereto attached."

We have not been apprised nor made acquainted with the contents of such opinion, even if it were material herein.

It is submitted by claimant, in his brief and argument that election contest expenses have for many years been paid by Congress and the various states, and that a terrible abuse of such powers had heretofore prevailed in Congress and in the Illinois General Assembly; and that such expense for election contests in the 48th General Assembly of Illinois amounted to about $68,000.00.

The 50th General Assembly seems to have curbed and remedied such abuse to the extent, at least of the amount of expenditures mentioned in the resolution above referred to.

There seems to be no dispute about the facts in this case. Both parties cite, and it is the law, that section 9, article 4, Constitution 1870, Illinois, provides as follows:

"Each house shall determine the rules of its proceedings and be the judge of the election returns and qualifications of its members."

States in creating offices have the right to provide such agencies and mode of procedure as they deem fit to determine the result of the elections to such offices without the intervention or interference by the Courts—9 Ruling Case Law, page 1158, *Taylor* v. *Beckham* 108 Ky. 278, 49 L. A. R. 258.

The constitutional provision making each house the judge of election and qualifications of its members is an exclusive grant of power and constitutes each house the sole and ultimate tribunal to pass upon the qualifications and elections of its members; and such power cannot be granted away or transferred to any other tribunal or office. *Ex-Parte Dalton* 44, Ohio St. 142; Note 16, A. S. R. 220. See also cases cited 9 Ruling Laws 1158.

This view is upheld in *Kilbourne* v. *Thompson* 103 U. S. 168 "The power given to the house of the Legislature is a judicial power and its acts in a judicial capacity when exercising it in an election contest of its members, the express vesting of this judicial power in a particular case so closely and vitally affecting the body to whom that power is given takes it out of a General grant of judicial power to Courts." *Board of Alderman* v. *Darrow,* 16 A. S. R. 220 (note).

The expense of election contests of the character mentioned is a necessary incident in such investigations, and in our opinion should be fixed and allowed or disallowed by the Legislative body hearing the contest.

This right it appears to the Court, is an exclusive as is the exclusive right to adjudicate the matter to be heard by such body.

There is no statutory provision governing the payment of such expenses, and the rules governing such bodies may or may not be changed by any session of the General Assembly at its pleasure.

In view of the facts and law in this case, the Court is not inclined to encroach upon, or abridge what appears to it to be the exclusive power and right of the State Legislature.

The Court holds that it is without jurisdiction in this case and the same is dismissed without prejudice.